IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DEBORAH L. TAYLOR,<br>Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-107-Y |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| Defendant. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

## FINDINGS AND CONCLUSIONS

### I.    STATEMENT OF THE CASE

Plaintiff Deborah L. Taylor ("Taylor") filed this action pursuant to Section 205(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security terminating her disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). On July 14, 2015, Taylor proactively applied for DIB and alleged that her disability began on September 29, 2011 (Transcript ("Tr.") 156-164). Taylor's application was denied initially on September 29, 2015, and upon reconsideration on January 13, 2016. (Tr. at 89-93, 95-98.) Taylor then requested a hearing before an administrative law judge ("ALJ"). (Tr. at 99-100.) On January 3, 2017, a hearing was held before the ALJ, and on January 26, 2017, the ALJ found that Taylor was not disabled within the meaning of the SSA. (Tr. at 10-31.) Taylor filed a written

1

request for review of the ALJ's decision to the Appeals Council. (Tr. at 148.) The Appeals Council granted Taylors' request for review and on May 2, 2018, issued an unfavorable decision. (Tr. at 1-9.)

Taylor filed a civil action under 42 U.S.C. Sec. 405(g), requesting judicial review of the ALJ's decision. The Court reversed and remanded the case to SSA for further proceedings. (Tr. 977-987). A second hearing before an ALJ was held on September 17, 2020. (Tr. at 906-941.) On October 14, 2020, the ALJ issued an unfavorable decision, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. at 887-905.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See id.* § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1;

20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), (f).  Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences.  *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).  At steps one through four, the burden of proof rests upon the claimant to show she is disabled.  *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments.  *Id.*  If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work.  *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla, but less than a preponderance.  *Id.*  A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision.  *Id.* (emphasis added).  An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations.  20 C.F.R. §§ 404.1520(a)(4), (e).  The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis.  *Id.* § 404.1520(a)(4).  At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work.  *Id.* § 404.1520(a)(4)(iv).  At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work.  *Id.* § 404.1520(a)(4)(v).

long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In her brief, Taylor presents the following issues: (1) whether the ALJ properly determined that Taylor could perform her past relevant work; (2) whether the ALJ properly determined that Plaintiff could also perform other work; and (3) whether the ALJ's decision must be remanded because the ALJ was not properly appointed in conjunction with the Appointments Clause of the United States Constitution. (Plaintiff's Brief ("Pl.'s Br.") at 1.)

### IV. ALJ DECISION

On October 19, 2020, the ALJ found that Taylor had not engaged in any substantial gainful activity since September 29, 2011, her alleged onset date of disability, and that she met the disability insured status requirements of the SSA through December 31, 2016. (Tr. 891.) At Step Two, the ALJ found that Taylor had the following severe impairments: degenerative disc disease, asthma, obesity, hypertension, and obstructive sleep apnea." (Tr. at 893.) At Step Three, the ALJ found that Taylor "did not have an impairment or combination of impairments that met or medically equaled any section in the Listing. (Tr. at 893.)

As to Taylor's RFC, the ALJ stated, "After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 303.1567(a). However, she is limited to occasional climbing and occasional exposure to dust, fumes, and pulmonary irritants." (Tr. 893 (emphasis omitted).) Based upon this RFC, the ALJ concluded that Taylor was able to perform her past

4

relevant work, a composite job, "comprised of office manager and traffic rate clerk, as she actually

performed the job." (Tr. at 893 (emphasis omitted).) Consequently, the ALJ found that Taylor

was not disabled. (Tr. at 898-99.)

# V. DISCUSSION
## A. Appointments Clause

Because the third issue raised by Taylor related to the Appointments Clause impacts

whether the Court should consider the first two issues, the Court will address the Appointments

Clause issue first. Taylor argues that her case must be reversed and remanded for a new hearing

because the ALJ issuing the unfavorable decision was not properly appointed prior to issuing his

decision in accordance with the Appointments Clause of the United States Constitution. (Pl.'s Br.

at 12-15.) Taylor, relying, *inter alia*, on *Lucia v. Securities and Exchange Commission,* 138 S. Ct.

2044 (2018), *Carr v. Saul*, 141 S. Ct. 1352 (2021),[2] and *Seila Law, LLC v. Consumer Finance*

*Protection Bureau*, 140 S. Ct. 2183 (2020),[3] claims, in essence, that the ALJ, is an officer of the

United States, not a mere employee, and, consequently, according to the Appointments Clause,

---

[2] Taylor relies on cases that, essentially, question whether an officer or agency head can lawfully and fully exercise his statutory power despite an improper appointment.

In *Lucia*, the Court held that Securities and Exchange Commission ("SEC") ALJs are "inferior officers" that must be appointed pursuant to the Appointment Clause of the United States Constitution and that a challenge to the ALJ's appointment must be timely made. *Lucia*, 138 S. Ct. at 2051-56. Subsequently, circuit courts interpreted *Lucia*'s "timely" requirement to mean a complaint about an ALJ's appointment must be raised at an administrative level or is deemed waived. *See*, e.g., *Valasquez on Behalf of Velasquez v. Berryhill*, No. 17-17740, 2018 WL 6920457, at *3 (E. D. La. Dec. 17, 2018). Recently, however, a growing number of Courts have determined that a social security disability benefit claimant's challenges to the proper appointment of the SSA ALJ are timely raised for the first time on review of the administrative decision in federal court. *Carr*, 141 S. Ct. at 1362 (Reasoning there is no requirement that claimants exhaust such challenges to an ALJ's appointment in administrative proceedings in order to preserve them for judicial review.").

[3] In *Seila Law*, the Court held that a for-cause restriction of the President's executive power to remove the head of the Consumer Financial Protection Bureau ("CFPB") violated constitutional separations of powers. 140 S. Ct. at 2197. The Court limited this, however, by holding that the for-cause-removal-protection provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act was severable from other provisions of Dodd Frank. *Id*. at 2209. Essentially, that because "the only constitutional defect [] in the CFPB's structure is the Director's insulation from removal," the "removal provision can be severed from other statutory provisions relating to the CFPB's powers and responsibilities." *Id*. (relying on *Free Enterprise Fund v. Pub. Co. Acct. Oversight Bd.*, 130 S. Ct. 3138 (2010)).

must be appointed by either the President, the courts of law, or the heads of departments. (Pl.'s Br. at 12-15 (citing United States Constitution, Art. II, s.2, cl. 2.))[4] Taylor argues that the ALJ's improper appointment, "deprived [Taylor] of a valid administrative adjudicatory process under 41 U.S.C. § 405(b)(1)." (Pl.'s Br. at 12-13.) Further, that, "because the instant separation of powers challenge involves government exercising powers that they did not lawfully possess, no showing of 'cause' [should be] required" to show Taylor suffered harm from the ALJ's appointment. (Plaintiff's Reply Brief "Pl.'s Rep. Br.") at 13.)

In her response, Defendant states "[t]he parties agree that 42 U.S.C. § 902(a)(3)[] violates the separation of powers to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause." (Defendant's Brief ("Def.'s Br.") at 2.) However, Defendant argues that "without more, that conclusion does not support setting aside an unfavorable SSA disability benefits determination." (*Id.*) Defendant relies on *Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021), and asserts that, "even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction actually caused her harm." (*Id.*) Defendant states Taylor is unable to show she was harmed by the unconstitutional statutory removal restriction for two reasons:

> First, the ALJ who issued the final decision denying Plaintiff's claim was not appointed by a Commissioner subject to Section 902 (a)(3)'s removal restriction. Rather, the ALJ had his appointment ratified by an *Acting* Commissioner of Social Security–whom the President could remove from that role at will, at any time.

---

[4] The relevant portion of the Appointments Clause provides as follows:

[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the [S]upreme Court, and all other Offices of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2.

Second, even putting aside the circumstances of the ALJ's appointment, Plaintiff must show that Section 902(a)(3)'s removal restriction caused the denial of her benefits claim. She has not made–and cannot make—that showing.

*(Id.* at 2-3.)

In *Collins,* Federal National Mortgage Association (Fannie Mae) and Federal Home Loan Mortgage Corporation (Freddie Mac) shareholders brought an action asserting, *inter alia,* that the Federal Housing Finance Agency ("FHFA") Director was unconstitutionally structured in violation of separation of powers. 141 S. Ct. at 1770. *Collins* upheld *Lucia's* precedent, finding "the Constitution prohibits even 'modest restrictions' on the President's power to remove the head of an agency with a single top officer." *Collins,* 141 S. Ct. at 1787 (quoting *Seila Law,* 140 S. Ct. at 2205). Having upheld the removal restriction as a Constitutional violation, the *Collins* then analyzed the "retrospective relief" available to the complaining shareholders. *Id.*

The Court found that the FHFA's Director was appropriately appointed to his position, and, despite the FHFA's unconstitutional removal provision, that "there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions in the office." *Id.* at 1788 (Relying on *Seila Law,* 140 S. Ct. at 2207-2211.). Further, the Court held that "[s]ettled precedent also confirms that the unlawfulness of the removal provision does not strip the [agency head] of the power to undertake the other responsibilities in his office . . . . " *Id.* at n. 23 (Relying on *Seila Law,* 140 S. Ct. at 2207-2211.).[5]

*Collins,* however, did not abandon the shareholders' argument that improper appointment of the FHFA director *could* inflict "compensable harm" on the shareholders, stating: "[T]he possibility that the unconstitutional restriction on the President's power to remove a[n] [agency

---

[5] "The mere existence of an unconstitutional removal provision, too, generally does not automatically taint Government action by an official unlawfully insulated." *Collins,* 141 S. Ct. at 1793 (Thomas, J., concurring).

head] could have such an affect cannot be ruled out."[6]  140 S. Ct. at 1789.  Ultimately, the Court

did not specify what it would consider as compensable harm.  However, *Collins* makes clear that

statutory provisions providing an agency head with the powers to act can be severed from removal

restrictions.  *Id.* at 1795 (Thomas, J., concurring).[7]

It is apparent, based on *Collins*, that the SSA Commissioner's removal-for-good-cause

provision pursuant to 42 U.S.C. 902(a)(3) is unlawful.  It is also apparent from the record that the

ALJ was appointed by an Acting SSA Commissioner, who is subject to the President's removal

without good cause.  (Def.'s Br. at 7.)  What is not apparent, however, is how the ALJ, appointed

by an acting SSA Commissioner, caused compensable harm to Taylor by denying her disability

benefits.  Absent a nexus between the unlawful removal statute of the SSA Commissioner, the

ALJ's appointment and subsequent denial of Taylor's benefits, the Court finds that remand is not

required on this issue.

**B.  Past Relevant Work**

In her brief, Taylor also argues that the ALJ erred in finding at Step Four that Taylor was

capable of performing her past relevant work[8] as an office manager/traffic clerk.  (Pl.'s Br. at 5.)

Taylor relies, *inter alia*, on Social Security Ruling ("SSR") 82-61, 1982 WL 31387, at *2 (Jan. 1,

1982), in arguing the ALJ improperly denied her at Step Four "due to her ability to perform past

relevant work as she had actually previously performed that work."  *Id.*  Taylor does not contest

---

[6] The Court provided an example of compensable harm stemming from an agency head's unconstitutional appointment: "[I]f the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal." *Id.* at 1789.

[7] Justice Thomas suggests the bar for proving a "compensable harm" based on an unlawful removal provision is steep: "I seriously doubt that the shareholders can demonstrate that any relevant action by an FHFA Director violated the Constitution.  And, absent an unlawful act, the shareholders are not entitled to a remedy." *Id.*

[8] Past relevant work is defined as the "actual functional demands and job duties of a particular past relevant job" or "[t]the functional demands and job duties of the occupation as generally required by employers through the national economy." SSR 92-61, 1982 WL 31387, at *2.

that the ALJ used the "actually previously performed" test in his evaluation of the testimony; rather, Taylor argues that the ALJ incorrectly interpreted the vocational expert ("VE")'s testimony under the test for whether Taylor could perform her past relevant work as generally performed in the national economy. *Id*. Taylor states the ALJ's own language suggests he interpreted the VE's testimony under the test for whether Taylor could perform her job *as generally performed in the national economy*, rather than "as actually previously performed." *Id*. at 7. Taylor notes the ALJ "explicitly ruled out [the generally performed in the national economy test] because the job was a composite of several jobs." *Id*. at 7, citing (Tr. 897.) The testimony in question from VE Barbara Dunlap at the September 17, 2020, hearing is as follows:

> [ALJ]: All right, for the first hypothetical, I'd like you to assume an individual of the claimant's age and education with the past work you've described.
>
> Further assume the individual was limited to work at the sedentary exertional level, limited to occasional climbing and occasional exposure to dust, fumes or similar pulmonary irritants. Could that hypothetical individual perform any of the claimant's past work?
>
> [VE:] Yes, the past work would fit your hypothetical, both the composite position, perhaps not in the environment that's the claimant – for the company that the claimant worked for.
>
> But as a composite position in itself, if we look at all the components of that work, it would fit your hypothetical. And then also the accounting clerk position as a standalone job would also fit, if that makes sense.
>
> [ALJ]: To be clear . . . so the composite job, you know . . . we're not allowed to say you go back and do a composite job as it's typically performed because there's no such thing.
>
> But so is your opinion she could do the composite job as she actually performed it?
>
> [VE]: Well, I'm not sure what the claimant – and I'm not sure if I'm a little confused here. The claimant indicated she had some problems because of the fumes in the office that caused her problems.
>
> [ALJ]: Yes, that was –

[VE]: That's what I'm not sure of, you know and how to answer you.  There – in terms of the environment in all of these positions, there is no environmental factor what would preclude a person from doing this composite job.

(Tr. 934-5.)

In his response, the Defendant asserts the ALJ's findings at Step Four were proper.  (Def.'s Br. at 19.)  Defendant states that the ALJ "properly relied on the testimony of the [VE] and the descriptions in the Dictionary of Occupational Titles (DOT), which described Plaintiff's past work as a composite job."  *Id*. at 20; (Tr. 897, 934.)  "Several district courts within the Fifth Circuit support the fact that there is no error in consideration of composite jobs as long as the ALJ called a VE."  *Id*. at 21, citing *Bryant v. Astrue*, 2010 WL 3541087 (W.D. La. July 30, 2010); *DKB v. SSA*, 20210 WL 502999 (W.D. La. Feb. 8, 2010); *Adams v. Astrue*, 2009 WL 774845 (W.D. La. Mar. 24, 2009).  Further, Defendant argues that "POMS DI24005.020(B) also provides that, when comparing Plaintiff's RFC to a composite job as Plaintiff performed it, find Plaintiff capable of performing the composite job only if he or she can perform all parts of the job.  Here, the VE's testimony supported the finding that she could perform all parts of the composite job."  *Id*. at 21-22, citing (Tr. 934.)  In summation, Defendant argues that "[s]ubstantial evidence supports the ALJ's . . . finding that Plaintiff was capable of performing her past relevant work, as she actually performed the job."  *Id*. at 20; (Tr. at 896-7.)

The ALJ found that Taylor's past relevant work was a composite job of "office manager/traffic rate clerk" because the job has "significant elements of more than one DOT occupation."[9]  (Tr. 897)  The ALJ stated the composite job "cannot be evaluated as work

---

[9] SSR 82-61 provides the following in regard to composite jobs:

[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case. For those instances where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a vocational specialist or vocational expert.

generally performed in the national economy [but] it can be evaluated as actually performed by

the claimant." (Tr. at 897.)  Regarding Taylor's RFC, the ALJ found the following:

> I find that, through the date last insured, the claimant had the residual functional
> capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a).
> However, she is limited to occasional climbing and occasional exposure to dust,
> fumes, and pulmonary irritants.

(Tr. at 893.)

> The ALJ reasoned as follows:

> The vocational expert testified that a hypothetical individual with the residual
> functional capacity above could perform the composite job as the claimant actually
> performed it.  The vocational expert further stated that there are no environmental
> factors that would preclude a hypothetical individual from performing the job.  Per
> the claimant's hearing testimony, she could no longer perform the job at her
> particular employer due to chemical exposure issues that were unique to that job
> (i.e., having an office above a leather hide processing facility), but it would not
> prevent her from performing the job as she actually performed it at a more typical
> work setting.   Accordingly, in comparing the claimant's residual functional
> capacity with the physical and mental demands of this work, I find that the claimant
> was able to perform her past relevant work in the composite job described above as
> she actually performed the job.

(Tr. at 897.)

An ALJ must analyze a plaintiff's past relevant work, a composite job, "as actually

performed" instead of "as generally performed in the national economy." *Deborah T. v. Saul*, No.

4:18-CV-765-O-BP, 2019 WL 5025951 (N.D. Tex. Sept. 6, 2019) (finding the ALJ committed

legal error at step four because he properly analyzed Plaintiff's composite job past previous work

as "generally performed," citing Program Operation as Manual System ("POMS") DI

25005.020(B), 2011 WL 453471 (requiring ALJs not to evaluate composite jobs as "generally

performed in the economy").  While POMS are not binding on the SSA Commissioner, they may

---

SSR 82-61, 1982 WL 31387, at *2 (S.S.A. 1982).

11

be binding an ALJ "in a case that falls squarely within one of the provisions." *Id.* at *4, citing *Bettery v. Comm'r of Soc. Sec.*, No. 14-03321, 2015 WL 4742296, at *8 n.9 (W.D. La. Aug. 10, 2015). "A court generally defers to POMS provisions unless it determines that they are arbitrary, capricious, or contrary to law." *Bettery*, 2019 WL 1387696, at *6.

When determining at Step Four whether the claimant could perform her composite job as past relevant work, the ALJ is permitted to consult a VE. *See, e.g., Adams*, 2009 WL 774845, at *7 ("At Step Four of the sequential evaluation process, the ALJ employed a VE to find that [the claimant] was able to return to her past relevant work."); *Pierce v. Astrue*, No. 07-1294, 2008 WL 4373036, at *13 (E.D. La. Sept. 22, 2008) ("Although a vocational expert is not required to make a step 4 determination, an ALJ may utilize such expert testimony."); *Holland v. Colvin*, No. 14-2964, 2015 WL 5437727, at * 11 (N.D. Tex. Aug. 31, 2015.) "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan v. Shalala*, 58 F.3d, 129, 132 (5th Cir. 1995). "Therefore, an ALJ may consult a VE to determine the proper characterization of the claimant's past work, and whether she can return to that past work as she actually performed it or whether she can perform the work as it is generally performed in the national economy." *Holland*, 2015 WL 5437727 at *11 (relying on *Semien v. Colvin*, No. 12-02179, 2013 WL 3778984l, at *6 (W.D. La. July 17, 2013.); *See* SSR 82-61. Notably, at Step Four, the claimant bears the burden of showing that she cannot perform her past relevant work. *See Leggett*, 67 F.3d at 564.

Based on the record, the undersigned finds that Taylor's past relevant work was a composite job because it involved significant elements of two different occupations of office manager and traffic rate clerk. (Tr. 934.) In this composite position at the hide-processing company, Taylor would not "physically handle any [] products," but would "call and arrange the trucking," "prepare invoice[s], the Bill of Ladens, the late sheets, the health certificates," and

"advise the customers and officers of the time limit when we received the payment." (Tr. at 915.) Taylor performed her composite job past relevant work in a hide processing company "directly over the hide processing company, which is down below that actually cut the raw hide." (Tr. at 921.) Taylor contends that her exposure to the hide processing irritants caused her illness. (Tr. at 921-24.)

At the September 17, 2020, hearing, when asked if Taylor could do her composite job as she actually performed it, the VE stated that, *inter alia*, "the past work would fit [the ALJ's] hypothetical, both the composite position, [but] perhaps not the environment." (Tr. 934.) The VE then stated, "there is no environmental factor that would preclude a person from doing this composite job." (Tr. at 935.) Taylor did not cross-examine the VE on this hypothetical. The ALJ found that, while Taylor could no longer perform the job at her particular employer due to "chemical exposure issues that were unique to that job (i.e., having an office above a leather hide processing facility," she was capable of performing the job as she actually performed it in a "more typical work setting." (Tr. at 897.)

The VE's testimony that Taylor could perform her composite job as she actually performed it in a more typical environment is sound. Taylor failed to elicit further explanation or testimony on the VE's testimony, as was her choice. However, Taylor, bearing the burden at Step Four to show that she cannot perform her past relevant work, has failed to do so. As such, the Court finds that the ALJ's finding is sound and any error in his reasoning is harmless.

**C. Other Work**

In her final issue, Taylor argues that the ALJ erred in relying on testimony from the VE to find at Step 5 that Taylor retained the ability to perform other work that existed in significant numbers in the national economy. (Pl.'s Br. at 7-12.) Specifically, Taylor states:

The ALJ [] made an 'independent review' of the Work Field and Industry codes and concluded that there was substantial overlap between the claimant's past relevant work and the three jobs identified by the vocational expert [The ALJ] failed to do a complete comparison, leaving an impression that there was very little vocational adjustment needed from [] Taylor's office manager/traffic rate clerk composite job to three jobs cited by the VE when in fact there is considerable vocational adjustment required.

(Pl.'s Br. at 9-9, relying on (Tr. 898).)

During the hearing before the ALJ, the VE testified as followed:

[ALJ]: So still Hypothetical 1, could that individual perform any other work in the national economy if you were to limit your response to jobs that could be performed with transferable skills, if any, from the claimant's past work?

[VE]: Well, the claimant would certainly have transferable skills. The reasoning, judgment, problem solving, record keeping, report writing, keyboard skills would certainly transfer.

. . . .

[ALJ] And, Ms. Dunlap, has your testimony today been consistent with the *Dictionary of Occupational Titles*?

[VE]: Yes, Judge . . .

(Tr. at 936.) The VE went on to list three different occupations that would be transferable to

Taylor: Accounting Clerk, Billing Clerk, and Payroll Clerk. (Tr. at 897-898.)

In his response, Defendant states the "VE's finding that Plaintiff had transferable skills was

proper," as the VE "described a few of Plaintiff's occupational significant characteristics that

equated to transferable skills." (Def.'s Br. at 19.) Defendant also points to the record's absence

of any questioning from Taylor's attorney regarding other, un-mentioned transferable skills. *Id*.

Regarding Taylor's argument that the Work Field Codes, as examined by the ALJ, differ

from the VE's testimony and the contents of the DOT, Defendant states the record shows the VE

relied on the DOT. (Def.'s Br. at 19 (relying on (Tr. 940).) Defendant provides "[t]he Fifth Circuit

has stressed the value of a VE in determining a claimant's ability to perform work in the national

economy." *Id*. at 20, citing *Fields v. Bowen*, 805 F.2d 1178, 1171 (5th Cir. 1986). As such,

14

Defendant states that, because Taylor did not challenge any inconsistency between the VE's testimony and the DOT, that the ALJ "properly relied on the VE's testimony" in issuing his Step 5 finding. (*Id.* at 19.)

In this case, as stated above, the ALJ found that Taylor had the RFC to perform sedentary work with limited to occasional climbing and occasional exposure to dust, fumes, and pulmonary irritants. (Tr. 893.) Thereafter, at Step 5, the ALJ held, based upon testimony of the VE, that Taylor could perform the jobs of Accounting Clerk, Billing Clerk, and Payroll clerk, that existed in significant numbers on the national economy. (Tr. at 898.) In making such a determination, the ALJ stated:

> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles.*
>
> Both components of the claimant's composite job involved Work Field code 232 (Numerical Recording-Record Keeping). All three jobs identified by the vocational expert also involve Work Field code 232.
>
> I conclude that the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs that existed in significant numbers in the national economy.
>
> Accordingly, although the claimant's additional limitations did not allow the claimant to perform the full range of sedentary work, considering the claimant's age, education and transferable work skills, a finding of "not disabled" is appropriate under the framework of Medical Vocational Rule 201.07, section 201.00(f) of the Medical Vocational Guidelines, and 20 CFR 404.1568(d).

(Tr. at 898.)

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Newton,* 209 F.3d at 453. "Once the Commissioner makes this showing, the burden of proof shifts back to the

claimant to rebut this finding." *Newton*, 209 F.3d at 453. In this case, the ALJ supported his determination at Step 5 by relying upon the testimony of the VE.

A VE is called to testify because of his familiarity with job requirements and working conditions. *Vaughan*, 58 F.3d at 132 (citing *Fields*, 805 F.2d at 1170). As noted above, "the value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a VE "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Id.* In this case, the VE testified that a person with Taylor's RFC determination could perform various jobs that exist in significant numbers in the national economy. Such testimony provides substantial evidence for the ALJ to rely on at Step Five.

Moreover, while Taylor searched the DOT for Accounting Clerk Job, Billing Clerk, and Payroll Clerk—determining that, while they do share WF code 232, they also depart in various other codes and are, thus, in conflict with the VE's testimony—two of the three jobs (Billing Clerk and Payroll Clerk) are sedentary with specific vocational preparations ("SVP")[10] of 4 or less. (Tr. 898). The Accounting Clerk job is also sedentary, with an SVP of 5. (Tr. at 898.)

Thus, even if a conflict did exist with some of the jobs found by Taylor, there are at least two positions on which the ALJ could accurately rely in making his decision at Step Five. Thus, any proffered error would not be prejudicial and would not warrant a reversal of the ALJ's decision. *See Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 617 (E.D. Tex. Apr. 8, 2009) ("The Commissioner's burden at Step 5 of the sequential evaluation process . . . is satisfied

---

[10] SVP rating is used as a guideline by the SSA in determining a claimant's skill level of past jobs and how long it would take a claimant to achieve average performance in a job. *See* POMS: DI 25001.001.

by showing the existence of only *one* job with a significant number of available positions that the claimant can perform.")

## RECOMMENDATION

It is recommended that the Commissioner's decision be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **July 26, 2022,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 12, 2022.

**JEFFREY L. CURETON**
**UNITED STATES MAGISTRATE JUDGE**

JLC/adh

18